FÉLIX V. SOTO GALÁN, Plaintiff and Appellee, *v.* TULIO F. LÓPEZ, MAYOR OF THE MUNICIPALITY OF BAYAMÓN, Defendant and Appellant.

No. R-63-83.     Decided November 17, 1970.

*P. J. Santiago Lavandero, Ángel M. Rodríguez Lozada,* and *Ramos & Latoni* for appellant. *Luis A. Archilla Laugier* and *Mario A. Rodríguez* for appellee.

MR. JUSTICE RIGAU delivered the opinion of the Court.

On April 21 of this year we delivered an opinion in this case. A well-grounded motion for reconsideration moved us to reconsider the same.

On August 23, 1962, Félix Soto Galán filed a petition for mandamus in the Superior Court, Bayamón Part, where he alleged that he was an employee of that municipality; that defendant in his capacity as mayor of that city removed him from his position without just cause and without complying with the provisions of § 93 of the Municipal Law; and requested the Court to order defendant to reinstate him in his position and to pay him the wages not received since the date of his discharge.

Defendant answered denying that plaintiff was or had been a municipal employee and he also alleged that the writ of mandamus did not lie in this case. After the corresponding hearing the trial court sustained the complaint and ordered defendant to reinstate plaintiff in his employment, with a retroactive effect to the date of the removal. Through our previous opinion and judgment we reversed the judgment of the trial court. We have reached the conclusion that we must set aside our previous judgment and affirm the judgment of the trial court. The reason therefor is that previously we incurred error in considering that appellee's work was temporary and that for that reason the guarantees of § 93 of the Municipal Law did not cover him.

The truth is that, as set forth by the Superior Court in its findings of fact, appellee worked for the Municipality of Bayamón, regularly and consecutively for a period of fourteen months, rendering services as calligrapher, for a fixed monthly payment, consigned each month in the payroll. His appointment was not for a fixed or temporary term, but for an indefinite term.

■ Plaintiff is right when he argues in his motion for reconsideration that the condition of an employee being cov-

ered or not by the aforementioned § 93 should be determined on the basis of the function or nature of the work performed and not on the name of the office or position. Plaintiff regularly performed the function of transcribing the minutes to the Minute Book of the Municipal Assembly, a function which is undoubtedly of a permanent and not of a temporary character, for it is obvious that the Municipal Assembly is a continuous body, which exists as long as the municipality and its Municipal Assembly exist.

■ It is true that appellee was appointed by the Mayor through an oral designation and that the former did not take an oath upon taking office. The fact that all the formalities concerning appellee's appointment were not fulfilled, is not conclusive for the decision of the case, for even assuming that he was not an employee de jure the facts show that he was an employee de facto, and since § 93 of the Municipal Law does not distinguish between de facto employees and de jure employees, it is not in our hands to do so, particularly when by so doing we would go against the merit system principle, universally acknowledged as desirable in public administration. This has been thus acknowledged by the case law.

A case substantially similar to the case at bar, *Barkus* v. *Sadloch*, 120 A.2d 465, dealt with a municipal employee who was removed without charges having been preferred against her and without a hearing being accorded to her. She challenged the illegality of her removal on the basis of a statute similar to ours, which prohibited her removal except for good cause and after a hearing. The Supreme Court of New Jersey, stated, at pages 467–468, that the tenure statutes (except for just cause) extend alike to de facto officers and de jure officers. It added that plaintiff was a de facto employee of the City of Garfield, that the term of her appointment was not fixed by law, but was indefinite, and concluded that she had been illegally removed.

In Puerto Rico the applicable law is the following: For the removal of municipal officers or employees the Municipal Law in its § 93 requires just cause, preferment of charges, and a proceeding with service of notice and a hearing. 21 L.P.R.A. § 1553. At the time plaintiff worked for the Municipality of Bayamón (from March 15, 1961 to May 22, 1962) said § 93 insofar as pertinent, provided as follows:

"Employees may be removed by the mayor, for just cause, upon preferment of charges and a hearing with ten (10) days' notice, said hearing to be held before a committee of three persons appointed by the mayor with the advice and consent of the municipal assembly. In said hearing the employee shall have the opportunity to defend himself from said charges and may be represented by counsel. Said committee shall be composed of persons who are not municipal employees. . . ."

Said § 93 was amended by Act No. 114 of June 27, 1964. 21 L.P.R.A. § 1553, Supplement. The new text of said section includes municipal officers in its protection (the previous one referred only to the employees) and it contains other details which we need not detail herein because of their irrelevance to the instant case.[1]

The Municipal Law in its § 92, also provides that:

"No municipal employee shall be appointed, promoted, demoted, or suspended or in any way discriminated against by reason of race, political ideas or religious creed." 21 L.P.R.A. § 1552.[2]

Already in *Belaval* v. *Todd*, 24 P.R.R. 24, 35 (1916), this Court in construing a provision of the Municipal Law of 1906 which contained the same principle of just cause which the act in force contains,[3] stated the following:

---

[1] As far as removal of officers is concerned, already, the law in its § 44 also required just cause upon preferment of charges. 21 L.P.R.A. § 1263.

[2] The Constitution, Art. II, § 1, also provides in part that "No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas."

[3] 1906, Sess. Laws, p. 114.

"If the Legislature had intended that municipal employees should be removable at will by mayors, . . . it would not have used the words 'for just cause' in section 32 of the Municipal Law as it did.

"These words have a meaning. They reveal a manifest intention. They show that for the good of the municipal administration and therefore of the people, the Legislature decided to organize in the municipalities of Porto Rico a staff of employees who might hold office under the firm conviction that the permanency of their positions depended upon the faithful performance of their duties."

In *Bezares* v. *González, Mayor*, 84 P.R.R. 450, 458 (1962), the actual Municipal Law being already in force we stated before a similar problem, the following:

"The Act does not leave any room for doubt as to the procedure for the removal of the petitioners. Neither does § 93 make any distinction upon offering its protective shield, between employees appointed by the same administration that may remove them or a previous administration." (Citations omitted.)

For a reiteration of the same principle see *Figueroa* v. *López, Mayor*, 89 P.R.R. 464, 465 (1963). And in *López, Mayor* v. *Superior Court*, 90 P.R.R. 299, 307 (1964) we said:

"Summarizing . . . we may state that when an officer or employee holds an office or employment having a fixed term of tenure or indefinitely, but his removal must by mandate of law, be for 'cause,' or for 'just cause,' such cause or just cause is legal cause or cause in law, and not the views or simple evaluation of the removing power, no matter how apparent or justified he may deem to be his reasons of removal. Thus, a removal for cause or for just cause must be preceded by a determination of a legal sort or of a judicial nature as to whether or not there is cause or just cause. This in turn requires removal to be preceded also by a hearing granted to the removed officer or employee, together with an opportunity to be heard in self defense against removal."

We must also dispose of defendant's contention in the sense that a petition for mandamus is not the proper vehicle

to request the reinstatement in office or employment after an illegal removal. The contention lacks merit. Mandamus is a proper remedy to prevent an officer or board from removing an officer or employee from his office, without authority therefor. *Gil* v. *Chardón*, 41 P.R.R. 208, 215 (1930). See also, *Bezares* v. *González, Mayor*, 84 P.R.R. 450 (1962); *Abella* v. *Piñero, Governor*, 66 P.R.R. 651 (1946); *Pérez Marchand* v. *Garrido, Commissioner*, 48 P.R.R. 445, 461 (1935); *Romero Moreno* v. *Gore, Governor*, 46 P.R.R. 394, 414 (1934); *Jiménez* v. *Reily, Governor*, 30 P.R.R. 582 (1922); *Sarriera* v. *Todd*, 26 P.R.R. 3 (1917); *Cintrón* v. *Berríos, Mayor*, 24 P.R.R. 673 (1917).

Our legislation as that of so many other countries with advanced or comparatively advanced public administration systems (England, United States, Germany, France, and others) recognizes the advantages of the merit selection system of public servants.[4] To this day it is understood that in the democratic systems the political power is requested and is obtained to serve the country and not to make use of it. It is widely accepted that the outmoded and discredited spoils system "with changes in all levels of the administrative personnel as a result of each election, may be considered a censurable, harmful and obsolete practice."[5] However, it is also accepted, as part of the democratic system, that besides the elective

---

[4] For an excellent exposition on the development, theory, and practice of the civil service in the modern state, see Finer, Theory and Practice of Modern Government 709 *et seq.*, rev. ed. (1960). For an exceptional summary of the problematic of modern public administration, see Muñoz Amato, *Introducción a la Administración Pública* 15–98 (1954). See also, the already classical *Introducción al Estudio de la Administración Pública* of Professor Leonard D. White (1964), particularly its chapters 21 and 22. This Spanish translation prepared by the United States Government for the programs of technical cooperation in the Spanish-speaking countries is a translation of the fourth North American edition of the book entitled Introduction to the Study of Public Administration (1954).

[5] *La Nueva Constitución de Puerto Rico*, Reports to the Constitutional Convention, prepared by the School of Public Administration of the University of Puerto Rico (1954), p. 515. White, *op. cit.* at 307.

offices, the higher personnel of the administrative instrumentality of the government (heads of the large departments of the executive branch; assistants and advisers to the first executive, etc.) even when they should have satisfactory technical qualifications they are not exclusively appointed in consideration thereof, but their appointment continues to be discretionary and on the basis of political trust. This is understood because mutual understanding of the important government programs should exist between the higher personnel of the administrative structure and the supreme authorities elected through popular vote. This, of course, is not applicable to the subordinate permanent personnel, which does not formulate public policy and which should be comprised in the civil service or in the merit service.

The Legislature aware of the advisability of extending to the proper levels the merit service, through Act No. 2 of April 22, 1959, authorized the public corporations of the Government of Puerto Rico and the municipalities to include their personnel in the employees retirement system of the Government of Puerto Rico, provided the municipalities seeking to partake of those benefits establish a merit system previously agreed upon with the Director of Personnel of the Government of Puerto Rico. 3 L.P.R.A. § 782.

In view of the foregoing we will reconsider our judgment rendered in this case on April 21, 1970, and will affirm the judgment rendered therein by the Superior Court, Bayamón Part on February 20, 1963.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.